IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shannon A., William A, on behalf of themselves and their children: C.A., T.A., D.A., and L.A., Minors,<br><br>    Plaintiffs,<br><br>    v.<br><br>Sue ANDERSON, James CORONA, Terry DEEN, Darcie GILL, Steve HISCOCK, Christopher VONKLEIST,<br><br>    Defendants. | 2:11-cv-00718-GEB-GGH<br><br><u>ORDER GRANTING AND DENYING IN PART DEFENDANT CORONA'S MOTION TO DISMISS AND GRANTING AND DENYING IN PART DEFENDANT CORONA'S MOTION TO STRIKE</u> |

    Defendant James Corona, M.D. ("Corona") moves for dismissal of the three claims alleged against him in the Third Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Corona's Mem. of P.&A. in Supp. of Mot. to Dismiss ("MTD"), ECF No. 50.) Corona also moves to strike Plaintiffs' request for attorney's fees and punitive damages under Rule 12(f). (Corona's Mem. of P.&A. in Supp. of Mot. to Strike ("MTS"), ECF No. 51.) Plaintiffs oppose certain portions of each motion; however, they agree "the Eighth and Ninth Claims against Corona should be dismissed, without prejudice" and "the request for attorneys fees . . . as to Corona should be stricken without prejudice" to be re-

alleged "according to proof after discovery." (Pls.' Opp'n to MTD 2:13-15, 8:4-6, ECF No. 58; Pls.' Opp'n to MTS 1:26-2:1, ECF No. 59.)

Since Plaintiffs agree the eighth claim (negligence per se) and ninth claim (violation of right to privacy protected under the California Constitution) "should be dismissed, without prejudice[,]" those portions of Corona's dismissal motion are GRANTED. Further, the portion of Corona's motion to strike, which seeks to strike Plaintiff's request for attorney's fees, is GRANTED since Plaintiffs agree it should be stricken. The remaining portions of Corona's motions are addressed below.

## I. LEGAL STANDARDS

### A. Motion to Dismiss

Decision on the Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore,

conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

### B. Motion to Strike

Rule 12(f) prescribes: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)(citation and internal quotation marks omitted).

"Motions to strike are generally viewed with disfavor and are not frequently granted. Further, courts must view the pleadings under attack in the light more favorable to the pleader." Lazar v. Trans Union LLC, 195 F.R.D. 665, 669 (C.D. Cal. 2000)(citations omitted). "Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." LeDuc v. Kentucky Cent. Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992)(citation omitted).

## II. FACTUAL ALLEGATIONS

This action concerns Plaintiffs Shannon A. and William A.'s arrests on forgery charges, which occurred after Shannon A. presented a doctor's note to their child L.A.'s school nurse regarding L.A.'s absence on January 11, 2010. Concerning Corona, Plaintiffs allege in relevant part as follows:

16. At all times relevant to the facts described herein, Defendant Dr. James CORONA is an adult male and resident of the State of California. Dr. James CORONA was at all times herein mentioned employed as a physician, duly licensed and practicing as a Medical Doctor in the State of California. He was L.A.'s primary care physician.

. . . .

73. . . . . [O]n January 11, 2010, Shannon A. brought both D.A. and L.A. in to the nurse because both were ill. L.A. had been vomiting and appeared to have symptoms of the flu. Her son, D.A., was also showing symptoms.

74. Defendant, nurse ANDERSON, refused to approve the absences, was rude and insisted that Shannon A. send her children to class because they had no fever. Reluctantly she took D.A. to class at C.K. Price Middle School, but refused to leave L.A. because he was too ill.

. . . .

76. The same day, on January 11, 2010, Shannon A. brought L.A. to Defendant Dr. CORONA concerning his flu like symptoms and vomiting, as directed by Defendant ANDERSON.

77. Shannon A. informed Dr. CORONA's medical staff that it was necessary for her to obtain a "doctor's note" excusing L.A. from school due to his flu like symptoms and vomiting. Shannon A. further informed Dr. CORONA and his medical staff, employees and authorized agents and representatives acting on behalf of Dr. CORONA that Defendant ANDERSON, the school nurse, was demanding a written doctor's note excusing L.A. from school so as to avoid any issue of L.A.'s unexcused absence from school.

78. Plaintiffs are informed and believe and thereon allege that one of Dr. CORONA's employees spoke to or engaged with Dr. CORONA regarding L.A.'s medical condition and Shannon A.'s request for a "doctor's note" excusing L.A. from school that day due to his illness.

79. Thereafter, one of Dr. CORONA's medical assistants/employees presented to Shannon A. a written doctor's note with Dr. CORONA's signature excusing L.A. from school.

4

80. Shannon A. submitted the doctor's note to Defendant ANDERSON as requested.

. . . .

91. Plaintiffs' are informed and believe and thereon allege thereafter, without Plaintiff's written consent or knowledge, on January 20, 2010, Defendant Terry DEEN telephoned Dr. CORONA seeking information about the doctor's note and other privileged information within L.A.'s medical files concerning L.A.'s medical condition not disclosed within the doctor's note.

92. Plaintiffs' are informed and believe and thereon allege that Defendant Terry DEEN informed Dr. CORONA that he was a Truancy Officer investigating L.A.'s frequent absences from school.

93. Plaintiffs' are informed and believe and thereon allege that Dr. CORONA was aware of the L.A.'s [sic] complete medical condition, prior requests from the school for verification of L.A.'s on-going condition and concerns Shannon A. and William A. were encountering due to the allegations of truancy by L.A.'s school.

94. Plaintiffs' are informed and believe and thereon allege that Dr. CORONA was aware of the demand made on Shannon A. and William A. to provide Orland Unified School District with the "Health Information" for L.A. as Dr. CORONA was requested to verify L.A.'s "special needs" concerning his Asthma caused sickness and reactions to pollen, molds, plants, flowers, and wind.

. . . .

96. Defendant Terry DEEN wrote in his investigation report of January 27, 2010, that he talked with Defendant Susan Anderson. According to Defendant Anderson, she faxed the "excuse note" to Defendant CORONA's office and was told by Dr. CORONA'S receptionist, Veronica, an authorized agent, employee and representative for Dr. CORONA, that "L.A. had not been seen in their office since "January 27, 2009," . . . .

. . . .

5

98. Plaintiffs' are informed and believe and thereon allege that when Dr. CORONA was asked by Defendant Terry DEEN if L.A. had been to Dr. CORONA on January 11, 2010, Dr. CORONA reviewed L.A.'s medical file and, revealing information from the medical file, informed Defendant Terry DEEN that L.A. had not only not been seen by Dr. CORONA on January 11, 2010, but, that L.A. had not been seen at that office "since January, of 2009." Dr. CORONA then provided false information stating that the doctor's note excusing L.A. from school was a forgery.

99. Dr. CORONA knew or should have known, based on his privileged and confidential relationship between patient and physician, that part of his confidential duties to L.A. included protections encompassing maintenance of a patient's medical information and medical history accurately.

100. But for Dr. CORONA'S improper release of confidential medical information regarding L.A.'s treatment and failure to maintain a copy of the "doctor's excuse note" in L.A.'s medical information, as well as an accurate written history of L.A.'s care by Dr. CORONA, Plaintiffs would not have suffered the harm they have experienced in this matter.

100. But for Dr. CORONA'S improper release of confidential medical information regarding L.A.'s treatment and failure to maintain a copy of the "doctor's excuse note" in L.A.'s medical information, as well as an accurate written history of L.A.'s care by Dr. CORONA, Plaintiffs would not have suffered the harm they have experienced in this matter.

101. Dr. CORONA's negligent misrepresentation that the "doctor's excuse note" was a forgery caused Plaintiffs to be harmed as described hereinafter.

102. Furthermore, Plaintiff's are informed and believe and thereon allege that Dr. CORONA was aware of the importance of providing correct information to Defendant Terry DEEN, because of the adverse consequences to L.A. and his parents if Dr. CORONA reported incorrect and false information to a law enforcement officer concerning supposed truancy violations.

103. Not only did Dr. CORONA disclose confidential and privileged and private medical information

6

and history to an unauthorized third person, he disclosed false information stating that the doctor's note from January 11, 2010, was not written by him.

104. Although Dr. CORONA did not disclose L.A.'s ailments, his failure to properly maintain L.A.'s medical treatment and history resulted in:

   a. an unauthorized and false disclosure of L.A.'s medical treatment and history;

   b. conscious disregard for the truth concerning the issuance of the "doctor's excuse;"

   c. false claim that the doctor's note was a "forgery" at the hands of Shannon A. and William A.;

   d. disclosure of confidential and privileged information concerning L.A.'s relationship with Dr. CORONA which disclosure was neither solicited by Defendant Terry DEEN or authorized for disclosure by Plaintiffs or any of them.

   [e.] the arrest of Shannon and William A.

105. Dr. CORONA'S breach of duty clearly resulted in humiliation to his patient and his patient's parents. Dr. CORONA had to know that giving information to a law enforcement officer seeking to verify a child's absence could result in a criminal proceeding against the child and/or his parents.

106. But for Corona's disregard for the truth and compliance with statutory mandate of physician-patient privacy, Shannon and William A. would not have been charged with a crime, would not have been arrested in the presence of their three (3) minor children and D.A. would not have been punished when attending elementary school resulting in the necessity to remove all three minor Plaintiffs from the Orland Unified School District. The local press would not have published their arrest and citizens of Orland Unified School District would not have stopped them on the street and stating that they were the criminals depicted in the local television and newspaper articles.

7

    107. It was foreseeable by Dr. CORONA that if he failed to maintain L.A.'s privacy rights and failed to maintain adequate records so as to preserve L.A.'s confidences, serious injury may result to his patient and his patient's legal guardians, giving rise to a request for punitive damages pursuant to Civil Code Section 3294.

    108. On or about February 24, 2010, the district attorney issued a complaint for felony charges of forging a document to be entered into evidence at a hearing against Shannon and William A.

(Third Am. Compl. ¶¶ 16, 73-80, 91-94, 96, 98-108.)

### III. DISCUSSION

**A.    Motion to Dismiss Plaintiffs' Negligence Claim**

Corona seeks dismissal of Plaintiffs' seventh claim for relief for general negligence, arguing: "plaintiffs . . . rehash the same argument as in their previous complaints; to which this Court ruled in Dr. CORONA's favor." (Corona's MTD 5:19-20.) In essence, Corona contends Plaintiffs' negligence claim is premised on his and his staff's disclosure that "L.A. had not only not been seen on January 11, 2010, but that L.A. had not been seen at the office since January 2009." Id. at 5:20-6:6. Corona argues said disclosure "is not protected health information" under HIPAA or California's Confidentiality of Medical Information Act since "it has no connection to L.A.'s physical condition or medical care." Id. at 6:6-6:18.

Plaintiffs rejoin, "CORONA's motion does not address . . . that the Third Amended Complaint sets forth facts . . . concerning CORONA's negligent violation of the principles of accurate patient record keeping, which . . . resulted in foreseeable injury to all Plaintiffs." (Pls.' Opp'n to MTD 6:16-19.) Plaintiffs argue that excluding Plaintiffs' assertions "relative to a claim that CORONA was

8

not authorized to disclose any medical information to [the truancy officer] without Plaintiffs' express consent," the facts alleged "sufficiently reflect Corona's failure to maintain L.A.'s medical history and treatment records properly . . . ." Id. Plaintiffs further explain in their opposition to Corona's motion to strike as follows: "Plaintiffs' claims against CORONA are based on negligence due to his failure to maintain L.A.'s accurate medical files, reports, and medical history. Had CORONA maintained accurate and true medical records of L.A., he would not have made false statements to the Truancy Officer . . . , which false statements is the pivotal factor leading to the Plaintiffs damages." (Pls.' Opp'n to MTS 4:23-5:2.)

Corona replies as follows:

> Up to this point, plaintiffs have alleged under their [negligence claim] that DR. CORONA was negligent in his duty to protect L.A.'s medical information and history . . .; and that DR. CORONA negligently misrepresented that the "doctor's note" was a forgery.
>
> It now appears that given this Court's most recent ruling, plaintiffs have conceded that they cannot base their negligence claim . . . on [Corona's disclosure of information to the truancy officer]. As such, plaintiffs now contend that DR. CORONA was negligent in that he failed to maintain a copy of the "doctor's note" in L.A.'s medical information, as well as an accurate written history of L.A.'s care.
>
> In their three previous complaints, plaintiffs have claimed that plaintiff L.A. was actually seen by DR. CORONA; however, their Third Amended Complaint asserts no such allegation. . . .
>
> Based on their Third Amended Complaint, plaintiffs are not making the contention that plaintiff L.A. was actually seen or examined by DR. CORONA or his staff. If that is the case, then there can be no valid assertions that DR. CORONA negligently failed to maintain an accurate written history of L.A.'s care.

(Corona's Reply in Supp. of MTD 1:23-2:18.)

Plaintiffs state in their opposition to Corona's motion to strike that their negligence claim is now premised "upon one set of conduct: bad record keeping and release of false information to police as a result of the bad record keeping." (Pls.' Opp'n to MTS 14:7-9.) Corona makes only one argument in support of dismissing Plaintiffs' negligence claim, as so limited, i.e. that a negligence claim for poor record keeping cannot be maintained against Corona since Plaintiffs do not allege that L.A. "was actually seen or examined by DR. CORONA or his staff." (Corona's Reply in Supp. of MTD 2:15-18.) However, Plaintiffs allege in the Third Amended Complaint that "Shannon A. brought L.A. to Defendant Dr. CORONA concerning his flu like symptoms and vomiting," on January 11, 2010; "Shannon A. . . . informed Dr. CORONA and his medical staff . . . that . . . the school nurse, was demanding a written doctor's note excusing L.A. from school[;]" and that "one of Dr. CORONA's employees spoke to or engaged with Dr. CORONA regarding L.A.'s medical condition and Shannon A's request for a 'doctor's note' excusing L.A. from school that day due to his illness." (Third Am. Compl. ¶ 76-78.) These allegations permit the reasonable inferences to be drawn that Corona, at a minimum, was told about L.A.'s medical condition and that he signed a doctor's note excusing his absence accordingly. Corona has not shown that such circumstances, in contrast to Corona personally examining L.A., are insufficient to support a negligence claim based upon his alleged failure to maintain adequate records, including a copy of the doctor's note his staff allegedly presented Shannon A.

For the stated reasons, Corona's motion to dismiss Plaintiffs' negligence claim premised upon his failure to maintain adequate medical records is DENIED.

### B.   Motion to Strike Punitive Damages

Corona moves to strike Plaintiffs' request for punitive damages arguing "they are unfounded since the complaint fails to allege evidence of oppression, fraud, or malice as to Dr. CORONA." (Corona's MTS 6:22-24.) However, "[t]he proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f)." Tamburri v. Suntrust Mortgage, Inc., No. C-11-2899 EMC, 2012 WL 3582924, at *1 (N.D. Cal. Aug. 20, 2012)(citations omitted); see also Estate of Mohammed ex rel. Wideman v. City of Morgan Hill, No. 5:10-cv-05630 EJD, 2012 WL 2150309, at *6 (N.D. Cal. June 12, 2012)(denying motion to strike punitive damages, stating "a motion to strike pursuant to Rule 12(f) is . . . not the appropriate mechanism to challenge a request for punitive damages"). "Indeed, the Ninth Circuit has [indicated] that 'Rule 12(f) . . . does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law.'" Tamburri, 2012 WL 3582924, at *1 (quoting Whittlestone, Inc., 618 F.3d at 975). "A claim for damages satisfies 'none of the five categories' in Rule 12(f) for striking material from a complaint, and a court may not 'read Rule 12(f) in a manner that allow[s] litigants to use it as a means to dismiss some or all of a pleading.'" Id. (quoting Whittlestone, Inc. 618 F.3d at 973-74.) Therefore, Corona's motion to strike Plaintiffs' request for punitive damages is DENIED.

### IV. CONCLUSION

For the stated reasons, Plaintiffs' eighth claim (negligence per se) and ninth claim (violation of the right to privacy under the California Constitution) are dismissed without prejudice, and Corona's motion to dismiss Plaintiffs' negligence claim is DENIED.

Further, Plaintiffs' request for attorney's fees is stricken without prejudice, and Corona's motion to strike Plaintiffs' request for punitive damages is DENIED.

Dated: November 1, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge